**TRANSAMERICAN TRAILER TRANS-PORT, INC., Plaintiff,**

v.

**SEAFARERS INTERNATIONAL UN-ION and/or Seafarers International De Puerto Rico and/or Siu De Puerto Rico and/or National Marine Engineers Beneficial Association, Districts 1 and 2, et al., Defendants.**

**Civ. No. 617–71.**

United States District Court, D. Puerto Rico.

Sept. 15, 1971.

Baker & Woods, Santurce, P. R., for plaintiff.

Pedro E. Purcell Ruiz and George L. Weasler, Santurce, P. R., Lopez-Lay & Vizcarra, Hato Rey, P. R., Carolyn Gentile, New York City, for defendants.

## OPINION AND ORDER

TOLEDO, District Judge.

On August 21, 1971, plaintiff, Transamerican Trailer Transport, Inc. (hereinafter "TTT"), instituted the instant action for injunctive relief together with a Motion for Temporary Restraining Order and Preliminary Injunction. This Court issued a Temporary Restraining Order against all the defendants[1] for a period of 10 days, setting down the hearing upon the preliminary injunction for August 25, 1971.

Jurisdiction of this Court was invoked by plaintiff on the basis of Section 301 (a) of the Labor Management Relations Act, 29 U.S.C. Section 185(a), as interpreted by the Supreme Court of the United States in Boys Markets Inc. v. Retail Clerk's Union, 398 U.S. 235, 90 S. Ct. 1583, 26 L.Ed.2d 199 (1970); Rule 65 of the Federal Rules of Civil Procedure and on Section 8(b) of the Act.

On August 23, 1971, upon Motion and Memorandum filed by Seafarer's International Union and/or Seafarers International Union de Puerto Rico and/or SIU de Puerto Rico, and National Marine Engineers Beneficial Association, District 2,[2] this Court issued an Order Vacating the Temporary Restraining Order above referred to. The only defendants thus covered by the Temporary Restraining Order were National Marine Enginers Beneficial Association, MEBA District 1, and the individual persons named in the complaint.

Hearing on the preliminary injunction was commenced on August 25, 1971 and

1. On August 26, 1971, in open Court, the plaintiff withdrew the complaint in all its parts as it related to Seafarers International Union, and/or Seafarers International Union de Puerto Rico, and/or SIU de Puerto Rico.

2. This was prior to the withdrawal of the complaint by TTT as to certain defendants, see supra Footnote 1.

except for non-working days, interruptions because of criminal and civil proceedings pending in the Court, and adjournments at the request of counsel, said hearing was held continuously until September 7, 1971, at which time, this Court issued its decision from the bench dismissing the instant complaint.

During the hearing, several motions filed by the parties and oppositions thereto, with their respective memoranda, were entertained by this Court. On August 27, 1971, the defendant's subject to the Temporary Restraining Order filed a Motion requesting that the same be declared null and void. Said Motion was denied by this Court on August 30, 1971, on the grounds that on the basis of the verified complaint filed by plaintiff, TTT had complied with both the requirements of Boys Markets, Inc. v. Retail Clerks Union, Local 770, supra, and those of Rule 65 of the Federal Rules of Civil Procedure. TTT was thus entitled to the Temporary Restraining Order which had been issued by this Court on August 21, 1971. On August 28, 1971, plaintiff requested the extension of the Temporary Restraining Order for an additional period of 10 days, which extension was granted by this Court on August 31, 1971.

Again on September 2, 1971, defendants subject to the Temporary Restraining Order, questioned the power of this Court to issue the relief requested by plaintiff. Plaintiff opposed the same by way of oral argument and written brief. On September 7, 1971, hearing on this motion was held, defendants introducing the oral testimony of William Divine, Administrative Assistant to the President of National Marine Engineers Beneficial Association and District 1, and Michael Di Prisco, Chief of Labor Relations of the American Maritime Association, in support of its contention. Plaintiff did not introduce any oral testimony or documentary evidence on its own behalf.

On the basis of the foregoing, the whole record of the case, and the evidence which was introduced by the parties herein, this Court makes the following

### FINDINGS OF FACT

1. Plaintiff, TTT, is engaged in the transportation of cargo between the ports of San Juan and New York and is the operator of the ships SS. Eric K. Holzer and SS. Ponce de León.

2. TTT and co-defendants National Marine Engineers Beneficial Association and MEBA, District 1, are signatories to a collective bargaining agreement executed on or about June 1967, (Plaintiff's Exhibit 4 a).

3. Co-defendant, Marine Engineers Beneficial Association, District 1, is the exclusive collective bargaining representative of the engineers employed on board plaintiff's vessels the SS. Eric K. Holzer and the SS. Ponce de León.

4. Co-defendant, Frank Costello, is a patrolman of codefendant Marine Engineers Beneficial Association, District 1.

5. Co-defendants Richard S. Gerald, Ellio Roderman, Clarence E. Hawkins, Rudolph Saliga, Leo V. Niham and Jeremiah McGillicuddy, at the time of commencement of this action worked as engineers on board plaintiff's vessel SS. Eric K. Holzer and were members of Marine Engineers Beneficial Association, District 1.

6. Co-defendants George Phaler, Alfredo Benitez, Otto Manning, Louis Glathorne, Cristobal Jacquez, David Boyd and George Prescott, at the time of the commencement of this action, worked as engineers on board plaintiff's vessel SS. Ponce de León and were members of Marine Engineers Beneficial Association, District 1.

7. The Collective Bargaining Agreement between TTT and co-defendants National Marine Engineers Beneficial Association and MEBA, District 1, was supplemented by the said signatories by virtue of a document entitled "Memorandum of Understanding", hereinafter referred to as "Memorandum". (Plaintiff's Exhibit 5).

8. The said collective bargaining agreement as supplemented, provides for the arbitration of grievances, at the request of either party.[3]

3. *Grievance Procedure and Arbitration:*

(a) There shall be no strikes, lockouts or stoppages of work during the period of this agreement. All disputes relating to the interpretation or performance of this agreement, which may arise between the parties hereto, shall be determined by a Licensed Personnel Board consisting of two persons appointed by the Association and two persons appointed by the Company. The aggrieved party shall submit a statement of its grievance to the Board in writing at a joint meeting which shall be held within forty-eight (48) hours from the time when the services of the Board are invoked (Saturdays, Sundays and holidays excluded), and the other party shall have an opportunity to submit a written reply thereto. The Board shall endeavor to adjust the dispute, and should it fail to satisfactorily adjust said dispute, it shall, within seventy-two (72) hours from the time of the beginning of the first meeting of the Board on the matter, submit the dispute to the Arbitrator mutually agreed upon by the Parties.

(b) In the event of the death of or resignation by the named arbitrator during the term of the Agreement, the parties shall endeavor within 30 days to agree upon a successor. If they fail to agree, the Senior Judge of the Federal District Court for the Southern District New York shall be requested to submit five names and each party shall have the right to strike two. The remaining name shall be designated as the arbitrator.

(c) The Board shall establish such rules for procedures as it may deem necessary.

(d) The decision of a majority of the Board or of the Arbitrator, as the case may be, shall be final and binding upon the both parties.

(e) Any expense of arbitration and any expense incurred by the Board shall be equally divided between the parties hereto.

(f) Unless some other place is mutually agreed upon, the Board shall meet in New York promptly upon written notice from either the Association or the Company.

(g) The Association and the Company may appoint alternates to act in place of the regular members of the Board.

(h) No licensed engineer shall be required to work under conditions which may endanger his health or safety, or be required to either work behind a picket line or cross a picket line. The refusal of an engineer to perform work in accordance with this paragraph shall not be cause for discharge and any action taken by an engineer or the Association in accordance with this paragraph shall not be deemed to constitute a violation of Section 2 hereof.

(i) The Company agrees to maintain a safety program to guarantee full and adequate safety measures for the engineers. The Company further agrees to work out a feeding program to improve the quality, quantity and preparation of food served on the vessels. Where the Association has any dispute with respect to the foregoing, the issue shall be presented to arbitration for a final disposition.

The above stated section of the collective bargaining agreement was supplemented by the Memorandum of Understanding of June 26, 1969, which in its pertinent part provides:

III. Section 2. (Grievance Procedure)

(1) The parties have agreed to provide for monthly arbitration meetings of the Licensed Personnel Board with the permanent arbitrator to act as chairman. The parties will also incorporate into the contract the quick arbitration procedure currently set forth in a letter agreement. The Arbitrator will be appointed by mutual agreement for a one-year period, renewable for one-year periods by mutual consent. In the event of the termination of the Arbitrator, the parties will agree within 15 days upon a successor, failing which the parties shall request an agreed-upon agency to designate 5 names from among which each party shall have the right to strike two and the agency shall designate a successor who shall serve for the balance of the contract year. The Arbitrator shall continue to serve until his successor has been designated. There will be also a proviso that the arbitrator must render a decision within fifteen days after the hearing has been closed unless the Parties have otherwise extended such time by mutual consent.

(2) The parties have agreed to amend the no-strike clause with the following suggested language, in lieu of the first sentence of Section 2(a): "The Union will not authorize or participate in any strike or stoppage of work during the period of this agreement and will take all reasonable steps to curtail such strike or work stoppage. The Company will not authorize, participate in or permit any lockout during the period of this agreement."

9. The "letter agreement" [4] to which reference is made in the "Memorandum" dated June 26, 1969, plaintiff's exhibit No. 5, is the letter introduced in evidence by District 1, as defendants' Exhibit C. In regards to this aspect of the case, defendants submitted the oral testimony of William Divine and Michael Di Prisco. The Court gives great weight to the testimony of said witnesses, and their demeanor on the witness stand and their forthright testimony convinced this Court of the correctness of the conclusion herein made. Further, if the Letter Agreement which District 1 introduced as Exhibit C was not the letter to which the Memorandum referred, as contended by plaintiff, plaintiff had ample opportunity to offer evidence in support of its contention, which it did not do.

10. MEBA District 2 is not the collective bargaining representative for the engineers employed aboard plaintiff's vessels the SS. Eric K. Holzer and SS. Ponce de León.

11. MEBA District 2 is not a party signatory to the collective bargaining agreement covering the engineers employed by TTT.

12. On or about August 20, 1971, at approximately 6:00 p. m., defendant MEBA District 2, set up a picket line in front of the plaintiff's ship, the SS Eric K. Holzer.[5] Members of MEBA District 1, employed aboard the SS Eric K. Holzer, were advised by Mr. Frank Costello, that according to the terms of Section 2(h) of the collective bargaining agreement signed by National Marine Engineers Beneficial Association, MEBA Dis-

4. The letter agreement dated June 26, 1969 expresses the following procedure for arbitration of disputes:

a) Prior to any issue being submitted to arbitration, the Agreement calls for a meeting of a Licensed Personnel Board consisting of two representatives of the company and two representatives of the Union.

b) There will be a fixed date, namely, the Thursday of the second full week of each calendar month, that will be set for the meeting of such Licensed Personnel Board with respect to any grievance that either party may have. If there are not grievances to be brought up in any such fixed meeting, the meeting can be cancelled by the parties giving at least 24 hours notice prior to the date of such meeting.

c) Either party may, in addition to such fixed meeting, have the right, on 24 hours notice, to request the convening of a Licensed Personnel Board to consider a grievance.

d) The Licensed Personnel Board meeting will be held at the MEBA Pension and Welfare Plan, 17 Battery Place, New York City, N.Y., at 10 A.M. on whatever date is fixed unless the parties agree on some other time or place.

e) The Arbitrator will serve as Chairman at any meeting of the Licensed Personnel Board. During the course of the Licensed Personnel Board meeting, the Arbitrator will make no decisions but merely guide the parties as Chairman. If the parties can mutually agree on the disposition of the grievance, it shall be deemed settled.

f) In the absence of such final disposition by mutual agreement before a Licensed Personnel Board, the Arbitrator will then, at the request of either party, have jurisdiction of the case to render a decision as arbitrator. Either party may request a further opportunity to present additional evidence for the purpose of the arbitration proceeding, which request shall be granted or denied in the discretion of the Arbitrator. In the absence of any such request, the Arbitrator is to proceed to an arbitration award without the need of any further hearings.

g) It is the desire and purpose of the parties that all grievances, available for the Licensed Personnel Board or arbitration, be disposed of as promptly and expeditiously as possible.

h) Either party shall have the right at any time to request that the procedures above outlined shall be discontinued, in which event the Arbitrator shall continue to hear and determine disputes submitted for arbitration in accordance with the provisions of the procedures set forth in the collective abargaining agreements.

5. The signs carried by the picketers stated: "The Masters, Mates and Pilots aboard this vessel SS. Eric K. Holzer and the International Organization of Masters, Mates and Pilots unfair to members of District 2 MEBA by interfering with MEBA contract and by attempting to take jobs of MEBA members."

trict 1 and TTT, they were entitled to respect the picket line set up by MEBA District 2.

13. Although plaintiff made oral requests to Frank Costello to submit the grievance to arbitration and made additional oral requests to representatives of MEBA District 1, in New York, at no time did TTT make a written request to arbitrate nor did it follow any of the arbitration procedures established either by the collective bargaining agreement, or the Memorandum and/or the Letter Agreement.[6]

In view of the foregoing Findings of Fact, the Court makes the following:

## CONCLUSIONS OF LAW

1. The picketing of MEBA District 2, was the result of a labor dispute as defined in Section 13 of the Norris La Guardia Act, 29 U.S.C. Section 113.

2. Section 7 of the Norris La Guardia Act, 29 U.S.C., Section 107, prohibits federal courts from issuing injunctive relief in a case growing out of a labor dispute.

3. A narrow judicial exception to the broad prohibition of the Norris La Guardia Act, was created by the Supreme Court of the United States in Boys Markets, Inc. v. Retail Clerks Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). The Supreme Court stated however, that its decision was not intended to "undermine the vitality of the Norris-LaGuardia Act."

4. In *Boys Markets*, supra, it was held that before a party can obtain injunctive relief in a federal court, the court must hold (1) that the case is one in which an injunction would be appropriate, despite the Norris La Guardia Act: (2) that there is a collective bargaining agreement in effect between the

parties; (3) that the contract contains a mandatory arbitration procedure; (4) that the dispute which is the subject of the grievance is one about which both parties are contractually bound to arbitrate; (5) that the dispute is the cause of the conduct or activity sought to be enjoined; (6) that the aggrieved party has invoked the grievance and/or arbitration procedure established in the collective bargaining agreement, and (7) that issuance of an injunction be warranted under ordinary principles of equity—that is, whether breaches are occurring and will continue or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance. Without deciding whether plaintiff herein has satisfied the first five requirements and the seventh requirement set forth above, this Court finds that the collective bargaining agreement herein, as supplemented, upon which plaintiff bases its cause of action, establishes an arbitration procedure to which TTT was bound to submit the dispute.

5. It is the opinion of this Court, that when the collective bargaining agreement establishes a specific procedure to be followed to submit a dispute to the grievance and arbitration proceedings, a mere oral request or offer to arbitrate is not enough to entitle plaintiff to injunctive relief. Before he is entitled to injunctive relief, plaintiff must have strictly complied with his obligation under the contract and show that the defendants refuse to comply with theirs. Since TTT did not properly invoke said arbitration procedure, it is not entitled to injunctive relief under *Boys Markets, Inc.*, supra.

6. See footnote 3 for the provisions in the pertinent section of the Collective Bargaining Agreement and the Memorandum. See also footnote 4 for the content of the letter agreement of June 26, 1969.

Although throughout the hearing plaintiff repeatedly stated through counsel that TTT had requested arbitration of the

dispute, it failed to introduce any evidence in support of its contention.

The parties agreed that, for the limited purpose of the decision of this Court on the motion to dismiss, they would stipulate that these oral requests for arbitration were made by plaintiff.

6. Since the power of this Court to issue injunctive relief in a Section 301 (a) suit, 29 U.S.C. Section 185(a) is based solely upon the judicial interpretation of Section 301 by the Supreme Court in *Boys Markets*, and since TTT has failed to satisfy a prerequisite to the issuance of injunctive relief mandated by the Supreme Court, this Court lacks the power to decide the merits of this case.[7]

Wherefore, it is ordered, adjudged and decreed, that the Temporary Restraining Order entered on August 21, 1971 and extended on August 31, 1971, be vacated and the preliminary injunction requested by plaintiff, is hereby denied; and

It is further ordered, adjudged and decreed, that the complaint be dismissed on the aforementioned grounds with costs and without attorney's fees.

It is so ordered.

---

7. We are not deciding herein if the grievance is or is not arbitrable. Nor do we pass upon any issue which the Court may have had to decide had TTT exhausted the arbitral procedure of the collective bargaining agreement.